IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**KENNETH BROWN**                                                               **PLAINTIFF**

**v.**                                                    **CAUSE NO. 1:10CV405 LG-RHW**

**GULFPORT POLICE DEPARTMENT, ET AL.**             **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT AND MOTION TO STRIKE,
AND DENYING MOTION FOR HEARING**

BEFORE THE COURT is the Motion for Summary Judgment [102] filed by Gulfport, Mississippi police officers Jonathan Grimes, Jeremy Hayes, and Alvin Kingston (the "Officer Defendants"). Additionally, the Court considers the Motion [111] to Strike filed by the Officer Defendants. The issues have been fully briefed. Considering the information the Officer Defendants possessed at the time they stopped and briefly immobilized Brown, they acted reasonably. They are therefore protected by qualified immunity and entitled to summary judgment.

In reaching this decision, the Court has disregarded the opinions contained in an affidavit by David Kent, an expert retained by Brown. Kent's opinions are legal conclusions or his own interpretation of the facts, and do not assist the Court in assessing the reasonableness of the Officer Defendants' actions. The Officer Defendants' Motion to Strike [111] Kent's affidavit will also be granted.

Finally, because the facts related to the traffic stop are readily ascertainable from the record, the Court denies Brown's request for a hearing.

PLAINTIFF'S ALLEGATIONS

Brown alleges in his amended complaint that Gulfport police officers Grimes, Hayes and Kingston used excessive force in effecting a traffic stop, because they pulled him out of his vehicle and forced him to the ground, causing serious injury. Brown alleges that the officers were on the lookout for an African-American named Jimmy Gerald Lowery, who they were informed was driving a 1990 model black Mustang north on Three Rivers Road. Brown, an African-American, was driving about three miles south of this point on Three Rivers Road in his blue 1994 model Mustang. Brown alleges the officers had enough information about Lowery to know that he was not Lowery, and in fact the dispatcher informed the officers as they approached Brown's vehicle that it was registered to Brown. According to Brown, with this information, the officers could not have reasonably believed he was engaged in criminal activity. Brown alleges the stop was unjustified and the force used was excessive, violating his Constitutional rights. His claims against the Officer Defendants are pursuant to 42 U.S.C. § 1983.

DISCUSSION

1. Qualified Immunity

The Officer Defendants contend they are entitled to qualified immunity from Brown's claim of excessive force. In order to invoke the defense of qualified immunity, the "defendant official must initially plead his good faith and establish that he was acting within the scope of his discretionary authority. Once the defendant has done so, the burden shifts to the plaintiff to rebut this defense."

*Salas v. Carpenter*, 980 F.2d 299, 306 (5th Cir. 1992). To meet defendant's initial burden, he must "demonstrate that he acted with a good faith belief that his actions were within his lawful authority, and that reasonable grounds existed for this belief based upon objective circumstances at the time he acted." *Douthit v. Jones*, 619 F.2d 527, 534 (5th Cir. 1980).

A defendant is then entitled to qualified immunity, unless (1) the plaintiff alleges that the defendant violated a constitutional right, and (2) the plaintiff proves that the defendant's conduct was objectively unreasonable. *Salas*, 980 F.2d at 305-06. A defendant's conduct will be considered objectively unreasonable if a reasonable official would understand that his conduct violates that constitutional right. *Id*. at 310. If reasonable officers could disagree over the lawfulness of the conduct, then a defendant is entitled to qualified immunity. *Id*. The officer's conduct is viewed in light of the clearly established law at that time. *Hare v. City of Corinth*, 135 F.3d 320, 326 (5th Cir. 1998).

2. The Evidence and Arguments

The Officer Defendants argue that they acted appropriately based on Brown's actions and the information they had at the time of the stop. Officer Kingston provides an affidavit stating that he came into contact with Brown shortly after hearing the dispatcher broadcast a BOLO, relaying a report of a domestic assault at 4:45 p.m. on August 10, 2009. (Def. Mot. Summ. J. Ex C, ECF No. 102-3). According to the report, a black male had assaulted the victim and pointed a gun with a pink grip in her face. (*Id*. at 3 (¶13)). The male had then fled in an older

model blue and black Mustang, traveling North on Three Rivers Road. (*Id*. at 3-4 (¶13, 14)). When Officer Kingston was within a couple of miles of the area of the assault, he observed Brown's vehicle at the intersection of Three Rivers Road and Seaway Road. As it appeared to be a blue and black Mustang, and it was driven by a black male, Officer Kingston decided to make a stop. (*Id*. at 5 (¶18)).

Officer Kingston states he did not know who was in the vehicle he had stopped. He was "first and primarily focused on locating any weapons, so everyone would be safe." (*Id*. at 7 (¶31)). Officer Kingston gave instructions to the driver to have his hands in view. (*Id*. at 6 (¶23)). Brown complied, but then moved his inside hand toward his waist. (*Id*. (¶24)). Because Brown could have been reaching for a weapon, Kingston ordered him again to raise his hands. (*Id*.). Brown complied. Kingston held onto Brown's left arm and released Brown's seatbelt. (*Id. (*¶25). As Brown exited the vehicle, he asked what was going on. (*Id*. (¶26)). This apparently made him even more suspicious to Officer Kingston, who then told him to get on the ground. (*Id*.). "Within a few seconds and in one fluid motion, the driver left the driver's seat and got on the ground." (*Id*.). The officers checked Brown's car and person for weapons. Finding none, Officer Kingston assisted Brown up off the pavement. (*Id*. at 6-7 (¶28)). Officer Kingston provided a video recording of the incident taken from his patrol car. (Def. Mot. Summ. J. Ex. 2 to Ex. C, conventionally filed).

Officer Jeremy Hayes submitted an affidavit describing his involvement in the traffic stop. (Def. Mot. Summ. J. Ex. D, ECF No. 102-4). He heard the

-4-

dispatcher's call, and Kingston's subsequent report that he was behind a vehicle matching the reported get-away car. (*Id.* at 3 (¶12)). He arrived at the scene just as Kingston was attempting to secure the driver. (*Id.* (¶14)). Hayes focused on locating any possible weapons in or around the vehicle. (*Id.* (¶15)). Hayes only touched Brown to help him get up off of the pavement. (*Id.* at 4 (¶17)). He did not hear Brown complain of any injuries. (*Id.* (¶18)).

  Officer Jonathan Grimes also submitted an affidavit. (Def. Mot. Summ. J. Ex. E, ECF No. 102-5). He came to the scene of the traffic stop when Kingston and Hayes were approaching Brown's vehicle. He provided back-up assistance, and only touched Brown to push his arm out of the traffic lane with his foot. (*Id.* at 4 (¶19)). Officer Grimes provided a video recording of the incident taken from his patrol car. (Def. Mot. Summ. J. Ex. 1 to Ex. E, conventionally filed).

  The video recordings are consistent with the Officer Defendants' affidavits, with the exception that Officer Grimes can be seen kneeling either on or very close to Brown's shoulder area after moving Brown's arm. Also, the dispatcher can be heard stating that the vehicle is registered to Kenneth Brown just as Officer Kingston reaches the driver's side door of Brown's vehicle, and while Officer Grimes is still inside his police vehicle.

  In opposition to the Officer Defendants' assertion of qualified immunity, Brown submitted his own deposition testimony in which he testified his Mustang was one tone - blue - "but the back has like a green trunk lid on it." (Pl. Resp. Ex. 1, at 122, ECF No. 105-1). Significantly, Brown did not provide any testimony or

other summary judgment evidence about the actual incident, or the consequences of the incident, in opposition to the summary judgment motion.

Brown did provide a lengthy expert report under an affidavit by David Kent, a retired First Deputy Chief from the New Orleans Police Department. (Pl. Resp. Ex. 2, ECF No. 105-2). Kent found that the police officers used faulty discretion, along with "unnecessary and excessive physical force" in the traffic stop, which "constituted a violation of [Brown's] Fourth Amendment Rights." (Pl. Resp. Ex. 2, at 19, ECF No. 105-2). The Officer Defendants move to strike the affidavit and all attachments. They contend that Kent cannot make a proper affidavit concerning the incident because he has no personal knowledge of it. They further argue that the affidavit contains numerous assertions of opinion based on conjecture or facts not in the record. In addition, the Officer Defendants contend that Kent has judged the reasonableness of their actions from Brown's perspective, rather than from the perspective of a reasonable officer at the scene, as is required for a qualified immunity analysis.

### *a. Brown Has Alleged a Violation of a Constitutional Right*

The first step of the qualified immunity analysis is determining whether the plaintiff has alleged the violation of a Constitutional right. The Fourth Amendment is implicated by Brown's allegations of excessive force. "All claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard[.]" *Graham v.*

*Connor*, 490 U.S. 386, 395 (1989).  Whether a seizure is reasonable under the Fourth Amendment depends not only upon whether the seizure itself is reasonable, but also upon how the police seize the individual.  *Tennessee v. Garner*, 471 U.S. 1, 7-8 (1985).  The Fourth Amendment's prohibition of the use of excessive force by the police against seized persons was clearly established prior to the 2009 incident at issue in this case.

### b. *Brown Has Not Shown the Officers' Conduct Was Objectively Unreasonable*

To determine the objective reasonableness of the actions of Officers Kingston, Grimes and Hayes, the second step in the qualified immunity analysis, the Court must consider whether "a reasonable officer could have believed [his conduct] to be lawful, in light of clearly established law and the information [he] possessed." *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).  The Court is to balance "'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (quoting *Garner*, 471 U.S. at 8).  The Court is to pay careful attention to the facts and circumstances of the case, including the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether he was actively resisting arrest or attempting to evade arrest by flight.  *Gutierrez v. City of San Antonio*, 139 F.3d 441, 447 (5th Cir. 1998).  It is important to avoid using hindsight, and "consider the fact that police officers are often forced to make split-second judgments - in circumstances that are tense,

uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97. "If an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, for instance, the officer would be justified in using more force that in fact was needed." *Saucier v. Katz*, 533 U.S. 194, 205 (2001).

*I.) The Affidavit of Plaintiff's Expert, David Kent*

The Court turns first to the question of whether the affidavit of David Kent, Brown's expert on the issue of police procedure, should be considered, or stricken. Kent expresses the opinion that the Officer Defendants used excessive force when they stopped Brown. He states:

> Assuming the three over-anxious officers could read license plate numbers and are not black/blue color impaired, their over-response was unnecessary. . . . At least one or two of the three officers should have recognized they lacked probable cause in electing a far too aggressive investigative stop. One that was probably based more on hormonal missed cues and irrationality than responsible judgment which signaled one of them to select force first as a consequence of their otherwise inflated risk assessment.

(Pl. Resp. Ex. 2, at 9-10, ECF No. 105-2).

Kent further states that "[i]t must have been abundantly clear upon hearing the registered owner's name as Ken Brown that there was insufficient reasonable belief to forcefully detain the driver, much less than assault him." (*Id*. at 10). Kent states that the Officer Defendants' "actions lacked probable cause." (*Id*. at 15). However, Kent later states "I conclude that the vehicle stop would have been appropriate under the circumstances, despite the mistaken identity. It could,

-8-

however, and should have been conducted in a dignified fashion, especially when it was learned that he was not Lowery." (*Id.* at 29).

Kent assumes that the officers knew that the physical description of the suspect did not match Brown prior to first contact, but he bases this on the fact that the details regarding Lowery were included in the dispatch log and "should have been broadcast to all personnel involved in any level of response." (*Id.* at 23). He states "[i]f the GPD's multiple-channel dispatch system failed to broadcast these descriptive features of the wanted subject, shame on the ineptitude of Hdqs. for failing to keep the field officers notified of these details." (*Id.* at 22-23). There is no indication in the record that any of the Officer Defendants had knowledge of the suspect's particulars at the time Kingston pulled Brown over. Nor is there evidence that either Kingston or Hayes heard, prior to engaging with Brown, that the vehicle was registered in his name.

Kent also undertakes some speculation about the suspect, stating that Lowery may have been known to area police officers if he was a "particularly bad character and/or neighborhood trouble maker." (*Id.* at 26). Further, Kent believes that the information transmitted in the BOLO broadcast would have led an experienced officer to suspect that "the female complainant from a residential section may be related or even intimately acquainted with the wanted subject," and that suspicion would have led them to further believe that the suspect would reappear later and could be apprehended then. (*Id.* at 8-9). Based on these assumptions and speculated facts or circumstances, Kent finds Brown's

apprehension by the Officer Defendants even less reasonable.

Reasonableness under the Fourth Amendment is a legal conclusion, making it an improper subject of expert witness testimony. *United States v. Williams*, 343 F.3d 423, 435 (5th Cir. 2003). The objective reasonableness of the Officer Defendants' actions "is the precise legal standard of *Graham* to be used in the qualified immunity inquiry." *DeMerrell v. City of Sheboygan*, 206 F. App'x 418, 426 (6th Cir. 2006). An expert witness can be helpful to the trier of fact when the testimony articulates standards of conduct from which the jury can make its own assessment about the objective reasonableness of an officers actions. After careful review of Kent's affidavit, the Court finds it is not helpful to the qualified immunity analysis. To a great extent, the affidavit consists of legal conclusions Kent has reached using facts he has presumed. The testimony is simply the Kent's own interpretation of facts readily apparent from the affidavits and video. *See Anderson v. City of McComb, Miss.*, No. 3:10CV617-TSL-MTP, 2012 WL 1344025 (S.D. Miss. Apr. 16, 2012) (expert opinions not considered because they "either amount[] to nothing more than his personal interpretation of the facts or a legal conclusion based on his personal fact finding, neither of which is the proper subject of expert testimony."). Accordingly, the Motion to Strike Kent's affidavit is granted.

### ii.) *The Remaining Evidence*

Turning now to the question of whether the evidence supports the Officer Defendants' assertion of the qualified immunity, the Court relies on: 1) the Officer Defendants' testimony regarding the information they possessed prior to the stop;

and 2) the videos from Kingston and Grimes' police vehicles, which show how events transpired after the stop.

The Officer Defendants stated they were on the lookout for a black and blue Mustang driven by a black man, and Brown was driving a blue Mustang with a very dark trunk lid.  He was driving only three miles away from where the incident occurred, albeit in the opposite direction from that reported by the victim.  The Officers were informed that the driver/suspect had a gun.  Kingston saw Brown lower one of his hands in a move that could have been toward a weapon inside the vehicle.

The Officer Defendants' actions in seizing and immobilizing Brown until they determined he did not have a gun and was not the suspect appear reasonable under these circumstances.  It is only in hindsight that the stop may appear unreasonable, because Brown can articulate differences between himself and the suspect in their vehicles, body weight, clothing, and direction of travel.  Given time to review them, these differences seem to be, at the least, noticeable.  However, the Court must, and has made allowances for the environment in which the Officers made their decisions.

CONCLUSION

In the context of summary judgment, a police officer is protected by qualified immunity unless a genuine issue of material fact exists regarding whether his actions were objectively reasonable.  *Byers v. City of Eunice*, 157 F. App'x 680, 683

(5th Cir. 2005).  The Officer Defendants were mistaken about Brown's identity, which led them to misapprehend the threat he posed to themselves and others.  But "even law enforcement officials who reasonably but mistakenly use excessive force are entitled to immunity."  *Wagner v. Bay City, Tex.*, 227 F.3d 316, 321 (5th Cir. 2000) (citations and quotations marks omitted).  The Court finds no question of material fact regarding the reasonableness of the Officer Defendants' actions.  It would not be apparent to a reasonable officer that his conduct was unlawful in the circumstances existing at the time of the traffic stop.  The summary judgment motion on the grounds of qualified immunity will be granted.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the Motion [102] for Summary Judgment filed by Jonathan Grimes, Jeremy Hayes, and Alvin Kingston is **GRANTED**.  Plaintiff's claims against these Defendants are **DISMISSED**.

**IT IS FURTHER ORDERED AND ADJUDGED** that Defendants' Motion [111] to Strike the Affidavit of David R. Kent is **GRANTED**.

**IT IS FURTHER ORDERED AND ADJUDGED** that Plaintiff's Motion [114] for Hearing is **DENIED**.

**SO ORDERED AND ADJUDGED** this the 23rd day of May, 2012.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
CHIEF U.S. DISTRICT JUDGE